UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS ANDREW CENSKE,

        Plaintiff,                      Case No. 2:11-cv-119

v.                                               Honorable Gordon J. Quist

COUNTY OF MARQUETTE, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Thomas Andrew Censke, an inmate at the U.S. Penitentiary in Pollock, Louisiana, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants County of Marquette, Sheriff Michael Lovelace, Prosecutor Cheryl Hill, Captain Greg Gustafson, Sergeant Unknown "Red" Holman, Corporal Unknown Harrington, Retired Chief Judge John R. Weber, Chief Judge Thomas L. Solka, Corporal Jennifer Racine, Deputy Cheryl L. Oliver, Deputy Dave Sherwin, Deputy Al Hamill, Sergeant Marie S. Chartier, Administrator Art Lauren, Sergeant Brian Steede, Corporal Unknown "TJ" Mallett, Pathways Community Mental Health, Marquette County Board of Commissioners, County Clerk Connie Brannum, and DHS Director Unknown Makitenik.

In his complaint, Plaintiff claims "1) Discrimination & Mental Health Dissability [sic], Denial of Access, 2) Deliberate Indifference to Seriouse [sic] Medical Need of Mental Health, 3) Retaliation or Denied Access to Redress." Plaintiff further states that "[b]y failing to train or

supervise, and establishing customs or policy of the aforesaid, Defendants are deemed liable." Plaintiff seeks damages.

Plaintiff states that while confined at the Marquette County Jail, Defendant Gustafson instructed deputies to keep Plaintiff restrained because of his mental illness. In addition, Defendant Lauren told the FBI that he was afraid of Plaintiff and aware of his mental illness. Plaintiff also claims that he was only allowed to attend chapel on three occasions over a period of about 20 months because of his mental illness. Plaintiff also claims that a variety of other prison services were denied to him, but granted to other prisoners who were not mentally ill. Plaintiff states that he was denied photocopies, while mentally healthy inmates were allowed to receive photocopies. Plaintiff did not receive replies to written complaints sent to Defendants Hill or to other county officials. Nor was Plaintiff allowed to have law books in his cell overnight. Plaintiff alleges that his books were confiscated and when he requested them at 5 a.m., he was told to send a kite, but that the kites would routinely not be picked up by jail officials. Plaintiff asserts that inmate Lex Harris had a Federal Criminal Rule book, identical to Plaintiff's, which was never confiscated, even when Plaintiff brought it to the attention of deputies. Plaintiff was not allowed pens or erasers, and pencils were only sharpened one time per day. In addition, Plaintiff was indigent and was only given one tablet of paper per month. Plaintiff contends that the jail did not have a policy for handling oversized legal mail, so that such mail was not sent out in a timely manner. Plaintiff states that some of his mail was delayed, and that a jailhouse lawyer's guide to filing claims was withheld from Plaintiff for a period of six months. Plaintiff asserts that Defendant Holman, United States Marshal Michael Shelley, and FBI Agent Morris interfered with the filing of *Censke v. Lauren*, 2:08-cv-269, by confiscating the complaint. However, a review of this court's electronic docketing system shows that *Censke v. Lauren*, 2:08-cv-269, was filed in this court on November 5, 2008, and was dismissed as failing to

state a claim on January 9, 2009. Plaintiff believes that a discriminatory and retaliatory custom or policy was enacted by Defendants due to his mental illness, which violated his right of access to the law.

Plaintiff contends that although there is a grievance procedure, "at least 50% of the time," no formal grievance or reply were provided to him. Plaintiff alleges that in July of 2009, two "negro" inmates with assaultive criminal histories verbally attacked Plaintiff. Neither of these inmates was transferred as a result of their misconduct. Plaintiff claims that on at least one occasion, deputies refused to give him his clean clothes, refused to provide underwear, and then issued him a misconduct for being found nude in his cell in front of female staff. Plaintiff states that he has been held naked, denied clothing, threatened with a taser, cuffed, isolated, and given misconducts. However, Plaintiff fails to specify the names of any Defendants responsible for these asserted violations.

Plaintiff further states that mental health services and treatments were denied to him, and that he was repeatedly denied telephone calls to receive mental health care. Plaintiff states that in September of 2008, he attempted to register to vote via Human Services, but that he was never registered.[1] Plaintiff states that he developed a skin rash after being placed in an isolation cell, because the cell had never been cleaned. However, Plaintiff fails to allege which, if any, of the named Defendants were responsible for these asserted violations.

Plaintiff claims that Defendant Chartier gave false reports to Defendant Weber at the direction of Defendant Gustafson, which caused Plaintiff to receive a longer sentence than he would

---

[1] The court notes that MCL 168.758b provides that a person who has been legally convicted and sentenced for a crime for which the penalty imposed is confinement in jail or prison may not be permitted to vote. Plaintiff was imprisoned at the time he sought to vote and fails to allege any exceptions to the prohibition on voting.

otherwise have received. Plaintiff also claims that he was assaulted by other prisoners, which resulted in serious injuries, and that this was due to the failure of Defendants to provide for a safe environment.

On July 26, 2011, the court dismissed Plaintiff's action against Defendants "County of Marquette," Lovelace, Hill, Weber, Solka, Racine, Oliver, Sherwin, Hamill, Chartier, Lauren, Steede, Mallett, Pathways Community Mental Health, Marquette County Board of Commissioners, Brannum, Holman, and Makitenik for failure to state a claim. In addition, the court ordered that the complaint be served on Defendant Gustafson.

Presently before the Court is Defendant Gustafson's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #40). Plaintiff has filed a response (docket #62) and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately,

the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted by Defendant Gustafson, Plaintiff's complaint appears to be asserting claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131, and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. 794(a). Defendant Gustafson contends that he is entitled to summary judgment because Plaintiff cannot show a violation of the American's with Disabilities Act. Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, Petitioner must show that he is a "qualified person," that he has a "disability," and that parole is a "service, program, or activity" of the state. In the ADA, the term "disability" is defined as, with respect to an individual: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Defendant Gustafson asserts that by his own admission, Plaintiff does not suffer from a disability. In support of this assertion, Defendant Gustafson refers to filings that have been made in the criminal proceedings filed against Plaintiff in *United States v. Thomas Andrew Censke*, Case No. 2:08-cr-00019-RAED-1. Defendant Gustafson refers to the Supplemental Sentencing Memorandum filed by counsel on behalf of Plaintiff on May 1, 2012. *United States v. Thomas Andrew Censke*, Case No. 2:08-cr-00019-RAED-1, docket #257. On pages 6 through 7 of that document, Plaintiff's criminal defense attorney stated:

> Defendant wishes to convey to the Court that he appreciates the Court's concern about his need for psychological treatment. However, he contends that his appropriate diagnosis is Post-Traumatic Stress Disorder (PTSD) and not mental illness.

In addition, Defendant Gustafson also refers to Exhibit 2 of that filing, which is a report by Psychiatrist Dr. Walter Rhinehart, dated September 28, 2010. Dr. Rhinehart made the following findings:

> Mr. Censke has a verified history of a traumatic event as a child in which he and his mother were victims of a prolonged violent attack, with Mr. Censke being an observer of his mother being brutalized. Following this episode, Mr. Censke had a behavioral change that included hypervigilance, anxiety, exaggerated feelings of mistrust. He certainly met the criteria for post-traumatic disorder, acute onset at one time. Over time, however, with continued cognitive and personality development, Mr. Censke has incorporated some of his coping mechanisms and adaptive strategies that he used to overcome the tremendous level of fear he had following these events into his characteristic style of dealing with others and his view of himself.

*United States v. Thomas Andrew Censke*, Case No. 2:08-cr-00019-RAED-1, docket #257-2. Dr. Rhinehart also stated that although Plaintiff had previously been diagnosed as having experienced manic phases of a bipolar disorder, Plaintiff was not exhibiting any signs or symptoms of bipolar disorder. *Id.*

Defendant Gustafson also refers to a "Federal Bureau of Prisons Psychology Data System" form dated August 23, 2010, completed by Dr. Rhinehart. Under "mental status" on this form, Dr. Rhinehart indicates that Plaintiff's current mental status, emotional expression, and behavior do not suggest significant mental health problems. Dr. Rhinehart notes that Plaintiff met the diagnostic criteria for a personality disorder, which is not a mental illness, but rather "an enduring pattern of inner experiences and behavior that is pervasive and inflexible, is stable over time and leads to distress or impairment." *United States v. Thomas Andrew Censke*, Case No. 2:08-cr-00019-RAED-1, docket #257-4, p. 1.

Defendant Gustafson contends Plaintiff's assertions, both made by him and by experts, are properly regarded as admissions which are binding on him in this civil case. Defendant Gustafson states that Plaintiff admitted that he did not suffer from a mental illness, and that his condition can best be described as a personality disorder. Plaintiff asserted that he suffers from post-traumatic stress disorder (PTSD), not bipolar disease. However, PTSD may be considered a disability for purposes of the ADA if it substantially limits one or more of the major life activities. *Hale v. King*, 642 F.3d 492, 501 (5th Cir. 2011); *Hoback v. City of Chattanooga*, 2011 WL 3420664, *3 (E.D. Tenn. Aug. 4, 2011). In addition, persons suffering from a personality disorder may also be considered disabled for purposes of the ADA. *Land v. Washington County, Minnesota,* 243 F.3d 1093, 1096 (8th Cir. 2001); *Spath v. Hayes Wheels Intern. - Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). Therefore, the fact that Plaintiff "admitted" that he did not have a "mental illness" does not compel a finding that he is not disabled as required by the ADA.

Defendant Gustafson further states that Plaintiff's personality disorder and PTSD do not substantially limit Plaintiff in one or more major life activities as required by the ADA. For purposes of defining a "disability," the ADA provides:

(2) Major life activities

(A) In general

For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) Major bodily functions

For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

(4) Rules of construction regarding the definition of disability

The definition of "disability" in paragraph (1) shall be construed in accordance with the following:

(A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

(B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

> (C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.
>
> (D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

42 U.S.C.A. § 12102.

Defendant Gustafson contends that Plaintiff has failed to present any evidence showing that he was substantially limited in one or more major life activities, so that he cannot show that he suffered from a disability. However, Defendant Gustafson fails to note that pursuant to 42 U.S.C.A. § 12102(3)(A), [a]n individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. As noted above, Plaintiff claims that Defendant Gustafson instructed deputies to keep Plaintiff restrained because of his mental illness and directed Defendant Chartier to give false reports to Defendant Weber for the same reason, which caused Plaintiff to receive a longer sentence. Therefore, because Plaintiff alleges that he was discriminated against because of a perceived mental illness, Defendant Gustafson's argument lacks merit.

Defendant Gustafson next asserts that his conduct was not motivated by a desire to discriminate against Plaintiff because of a mental illness. Plaintiff's ADA claim is subject to the three-year statute of limitations that governs personal injury actions in Michigan. *See e.g., Fox v. Mich. Dep't of Corrs.,* No. 08–CV–14410, 2010 WL 726517, at *3 (E.D.Mich. Feb.24, 2010); *see also Lewis v. Fayette Cnty. Det. Ctr.,* No. 99–5538, 2000 WL 556132, at *2 (6th Cir. Apr.28, 2000) ("[C]ourts faced with ADA or Rehabilitation Act claims have also looked to the state's statute of

limitations for personal injury actions."). Therefore, the court can only consider Defendant Gustafson's conduct while Plaintiff was incarcerated at the Marquette County Jail in 2008 and 2009.

In support of his motion, Defendant Gustafson attaches three types of documentation as exhibits: the logbook entries pertaining to Plaintiff, the incident reports on Plaintiff, and the grievances filed by Plaintiff. The incident reports that Plaintiff received during 2008 and 2009 constitute 31 pages and span the time period between April 24, 2008, and July 17, 2009. The reports were written by numerous law enforcement officials, including Cpl. Herrington, Deputy Diedrich, Cpl. Simula, Cpl. Racine, Deputy Osbourn, Deputy Hamel, Officer Sherwin, Officer DeChambeau, Sergeant Sides, Sergeant Mallett, Deputy Yelle, Deputy Collick, Deputy Kangas, and Deputy Rowe. The reports stated that Plaintiff had engaged in a variety of misconduct, including verbal and physical abuse, threats of violence, fighting with other prisoners, and assaulting prisoners and jail employees. (Defendant Gustafson's Exhibit 6, docket #42-6.)

Defendant Gustafson also attaches a copy of a letter from U.S. Marshal Michael Shelley, dated November 4, 2008, which states that Plaintiff attempted to mail three letter sized envelopes that contained threatening material on the exterior. The threats included the text "You will die," and "Paul Lochner 2008" (Assistant U.S. Attorney) on the drawing of a tombstone. In addition, the text "Clint Morris 2008" (FBI Special Agent) was located on the drawing of another tombstone. Marshal Shelley confiscated the envelopes from the Marquette County Sheriff's Department and forwarded them to AUSA Paul Lochner. (Defendant Gustafson's Exhibit 10, docket #42-10.) Plaintiff had written these letters while at the Marquette County Jail, and was found guilty of mailing threatening communications. *See* Case No. 2:08-cr-19.

A review of Marquette County Jail log entries shows that Plaintiff's classification was reviewed on May 23, 2008, November 2, 2008, December 2, 2008, January 2, 2009, and July 17,

2009. (Defendant Gustafson's Exhibit 4, pp. 9, 25, 34, 38-39, and 51, docket #42-4.) Each review resulted in a determination that Plaintiff's behavior merited a continuation in high security classification. Defendant Gustafson attests that Plaintiff's claim that other violent inmates were allowed to be mixed in the general population may be true, as inmates awaiting arraignment, trial or sentencing on murder charges or other violent crimes are sometimes housed in the county jail. Defendant Gustafson attests that the classification of an inmate is based on the judgment of department personnel as to the level of risk presented by the inmate, which includes an assessment of each inmate's behavior while confined. (Defendant Gustafson's affidavit, ¶¶ 32-34, docket #42.)

In his response, Plaintiff contends that there is ample evidence that he suffered from a mental illness during 2008 and 2009. However, as noted above, the court has already concluded that because Plaintiff alleges that he was discriminated against because of a perceived mental illness, Defendant Gustafson's argument that Plaintiff was not mentally ill lacks merit.

Plaintiff also reasserts the allegations in his complaint in support of his claim that Defendant Gustafson treated Plaintiff differently from other prisoners because he was mentally ill. However, in the opinion of the undersigned, the record clearly shows that Plaintiff's treatment while confined at the Marquette County Jail was the result of his own behavior. As noted above, Plaintiff has an extensive history of misconduct during the pertinent time period, including verbal and physical abuse, threats of violence toward government officials, fighting, and assaults on other prisoners and jail employees. The record does not support a claim that Defendant Gustafson excluded Plaintiff from participation in services, programs, or activities on the basis of a disability. Therefore, Defendant Gustafson is entitled to summary judgment on Plaintiff's ADA and RA claims.

Finally, Defendant Gustafson claims that he is entitled to summary judgment because he is entitled to qualified immunity. Government officials, performing discretionary functions,

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because it is clear that Plaintiff's federal rights were not violated, Defendant Gustafson is entitled to qualified immunity.

In summary, in the opinion of the undersigned, Defendant Gustafson did not violate Plaintiff's rights under the ADA or RA. Accordingly, it is recommended that Defendant Gustafson's Motion for Summary Judgment (docket #40) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C.

§ 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: April 25, 2013